## Elizabeth Mackie, Adm'x, v. Heywood & Morrill Rattan Co.

1. TRESPASSERS—*Who Are Not.*—When one visits the place of another upon an errand connected with the joint business of the two, it can not be said that he is a trespasser, nor that he is there without invitation.

2. EVIDENCE—*Of Deceased Person's Duties and Requirements Thereof — When Admissible.*—For the purpose of showing or tending to show the reason for deceased's presence where he was injured, evidence as to his duties and the requirements thereof is competent.

3. SAME—*Of Verbal Declarations by Injured Person to Employer, Indicating Necessity of His Presence Where Injured, Competent.*—Evidence of a verbal declaration made by a deceased person to his employer the day prior to his death, by which he indicated the necessity of a call by him at the factory on the day of the injury, is competent.

**Action in Case,** for personal injuries.    Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding.    Heard in this court at the October term, 1899.    Reversed and remanded.    Opinion filed March 12, 1900.

Appellant brought this suit against appellee to recover damages resulting, as was alleged, by reason of negligence of appellee, through which negligence the death of appellant's intestate was caused.

Appellant's intestate was a salesman, who was engaged in vending a compound used in boilers to remove scale. He had transacted business with appellee in selling to it this compound, and for that purpose had on at least two occasions visited the factory of appellee.   A part of this factory consisted of an engine room and boiler room. Within these premises and near the southeast corner of the boiler room was an open catch basin, several feet deep, used to collect the drip from steam pipes, and at the time in question filled with hot water.   This catch basin was usually and upon the occasion in question, uncovered, and it so overflowed that the water from it spread over the cement flooring and gave to it the appearance of a shallow pool of water collected upon the floor from the drippings

of the steam pipes. The barrel containing the compound which deceased sold to appellee was kept standing within a foot of this catch basin.

The evidence shows that the deceased had been upon appellee's premises twice prior to the accident. The first time was several weeks before, when he called on the engineer in the engine room to sell his compound, and was referred to the superintendent, who bought supplies. The second time was a week or so before the accident, when he again called on the engineer in the engine room and talked with him about the operation of the compound. On this occasion the engineer conducted him into the boiler room to the barrel of compound, which was standing near the catch basin referred to. Whether or not Mackie saw this catch basin at that time or whether or not the engineer called his attention to it, does not appear, as the engineer says he does not remember all the details of the conversation that day.

On the morning of the injury Mackie entered the appellee's premises for the third time. He first accosted a teamster, inquired for the engineer, and was directed to the engine room, which he was seen to enter. He was next seen to enter the boiler room alone. As he came in he spoke to one of the firemen, Dolsky, and asked him if he had one of the boilers "off," meaning out of service, on that morning. Dolsky replied that none of the boilers were "off" and told him that the engineer was in the engine room and that the first fireman was on top of the boilers. Mackie then spoke a few words with the head fireman. He was next seen by Dolsky in the catch basin containing the hot water, was helped out by Dolsky and was sent home, where he died from scalds thus received.

Upon the trial the court directed a verdict for appellee. From judgment thereon this appeal is prosecuted.

FRANCIS J. WOOLLEY, attorney for appellant.

RICH & LOEHR, attorneys for appellee.

MR. PRESIDING JUSTICE SEARS delivered the opinion of the court.

The only ground upon which the action of the trial court could have been predicated in peremptorily directing a verdict for appellee, is that appellant's intestate was a trespasser upon the premises of appellee, and hence that appellee owed to him no duty of ordinary care. There is no other ground disclosed upon which the evidence could have been properly excluded from the jury and a verdict directed.

We are of opinion that the action of the trial court was erroneous.

It is clear from the evidence that the deceased had business relations with appellee; that he had visited the premises in question before the time of the injury in connection with such business, and it is fairly inferable from the evidence that at the time of the injury his visit was for the purpose of the same business. Therefore the jury might properly have found from the evidence that he was neither a trespasser nor a bare licensee, but one upon the premises by invitation.

When one visits the place of another upon an errand connected with the joint business of the two, it can not be said that he is a trespasser, nor that he is there without invitation. John Spry Lumber Co. v. Duggan, 80 Ill App. 394; affirmed in 182 Ill. 218, and cases there cited; Indermauer v. Dames, 1 L. R. C. P. 274; McRickard v. Flint, 114 N. Y. 222; Gilbert v. Nagle, 118 Mass. 278; Pelton v. Schmidt, 104 Mich. 345.

In Indermauer v. Dames, *supra*, the court quotes with approval the following language, referring to one calling upon an errand of business:

\* \* \* " With respect to such a visitor, etc., we consider it settled law that he, using reasonable care on his own part for his own safety, is entitled to expect that the occupier shall on his part use reasonable care to prevent damage from unusual danger, which he knows, or ought to know, and that, when there is evidence of neglect, the question whether such reasonable care has been taken by notice, lighting, guarding or otherwise, and whether

there was such contributory negligence in the sufferer, must be determined by a jury as a matter of fact."

Questions are raised as to rulings of the trial court upon admission of evidence.

The following testimony was excluded upon objection of appellee, and the question of its competency may again rise upon another trial.    A witness deposed :

" It was one of Mr. Mackie's duties to make examination of boilers when they were open, and to see that sufficient of the chemical was being used to bring about satisfactory results, and that it was applied properly and only in sufficient quantities as would accomplish the purpose in a satisfactory manner."

And the following portion of the deposition of the same witness, who was the manager of the company in whose employ Mackie, the deceased, was at the time of the injury, was admitted in evidence.

" There was a complaint reported by Mr. Mackie as coming from some one in charge of the boilers at the Heywood & Morrill Rattan Company—I think the engineer—that trisodium phosphate had not been throwing off sufficient scale to satisfy him; that Mr. Mackie had ordered the dose increased, and that he had an appointment to inspect the boilers, one or all, on the morning of the day on which he was scalded.    Mackie made this report to me the evening of the day before he was scalded.    This report was made in the ordinary course and routine of his duties in our business.    Those reports were not unusual.    They were made by all the salesmen, every day, as well as by Mr. Mackie.    With reference to the report Mackie made to me the evening before he was fatally scalded, he told me the evening previous to his being scalded that he had an appointment with the engineer of the Heywood & Morrill Rattan Company the next day to examine the boilers, and that he was going to keep that appointment.    He said the appointment was made verbally; that the arrangement for the day following had been made a week or so previous, and that he had seen the engineer personally and made these arrangements.    Mackie reported to me at the same time and place that the Heywood & Morrill Rattan Company had complained of the chemical not removing scale fast enough; that the engineer had made this complaint to him."

We are of opinion that the first item was competent evidence. The purpose of the visit of deceased to appellee's factory could not be established by any direct evidence. The superintendent of appellee, with whom Mackie dealt, was also deceased at the time of the trial.

For the purpose of showing or tending to show the reason for Mackie's presence at the factory, the evidence as to his duties and the requirements thereof was competent. Galvin v. Mayor, 112 N. Y. 223.

Whether it was competent to admit the second item of testimony above set forth, viz., the declaration of Mackie made to his employer the day prior to the injury, by which he indicated the necessity of a call by him at the factory on the day of the injury, is another question. There is no decision of this State in point, so far as we are aware. But we are of opinion that this, too, was competent. Best on Evid. (Chamberlayne's Ed.), Sec. 502; Taylor on Evid. (8th Ed.), Sec. 697, 708; 2 Jones' Law of Evid., Sec. 333; Stapylton v. Clough, 2 Ellis & B. 933; Chaffee v. U. S., 18 Wall. 516; Lossone v. B. & L. R. Co., 66 N. H. 345; County v. Ingalls, 16 Ia. 81.

Mr. Best says:

" In both classes, viz., declarations against interest and declarations in the regular course of business, the evidence commonly appears in a written form, and it has even been made a question whether this is not essential to its admissibility. Furdson v. Clagg, M. & W. 572. But the inclination of the authorities is rather to the effect that verbal declarations, answering of course all other requisite conditions, are equally receivable, and it seems difficult to establish a distinction in principle between the cases," citing Sussex Peerage Case, 11 Cl. & F. 113.

No other questions are presented. For error in peremptorily directing a verdict, the judgment is reversed and the cause remanded.